MURDOCK, Justice.
Kristopher Vanderwall has filed both an appeal and a petition for a writ of mandamus challenging orders.of the Elmore Circuit Court in an action filed against him by M.C. We dismiss the appeal, and we deny Vanderwall’s petition.
■ I. Facts
On November 12, 2009, M.C. had an appointment to receive physical therapy at Tallassee Rehabilitation, P.C. (“Tallassee Rehab”), pursuant t'o a referral by her physician for treatment of back pain. M.C. arrived at Tallassee Rehab around 8:30 or 9:00 a.m. and was seen by Vander-wall, a physical therapist, whom she had never met.
According to M.C., the following then occurred. Vanderwall took her to a room, where he instructed her to put on a gown. Vanderwall left the' room and closed the door. M.C. took off her jacket and shirt and put on a gown. She did not take off her bra or her pants. Vanderwall returned to the room, unhooked M.C.’s bra and told her to lie on the table in the room; M.C. did as she was instructed, but, after she was on the table, Vanderwall started to move his hands over her body, removing her bra and the gown. Vanderwall then began to rub M.C.’s breasts, and he removed M.C.’s pants and panties and placed his fingers into her buttocks and genitals. In deposition testimony, M.C. testified that she was shocked and seared by Vander-wall’s actions and that she did not know what to do.
Vanderwall testified that “any and all transactions and interactions” he had with M.C. on November 12, 2009, were “in connection with the rendition of physical therapy services.” He stated that his actions were within the standard of care for a physical therapist and that “[njothing inappropriate occurred during the delivery of physical therapy to [M.C.].” He also stated that the services he did in fact perform were conducted pursuant to an order he received from M.C.’s physician, Dr.. Melvin Russell. Vanderwall testified that there was no therapy or medical reason for him to touch M.C.’s breasts or her genitals and that he did not do so.
*528 M.C. alleges that Vanderwall has a pattern of this kind of behavior and that he molested at least two other women in 2009 while administering physical therapy. In 2010, those two women filed an action in the Elmore Circuit Court against Vander-wall and Tallassee Rehab alleging that Vanderwall had molested them.[1]
M.C. filed a complaint against Vander-wall and Tallassee Rehab in which she sought money damages based on a claim of assault and battery against Vanderwall and a claim of negligent or wanton hiring against Tallassee Rehab. Both defendants answered the complaint and denied the allegations. Along with the complaint, M.C. filed requests for discovery from Vanderwall. Included in the discovery requests were interrogatories 9 and 10, which provided:
“9. Has anyone complained to you that they were inappropriately touched by you while at Tallassee Rehab? If so, please identify every person.
“10. Has anyone complained to you or to any of your employers that they were inappropriately touched by you while at an employer’s facility? If so, please identify said person.”
On August 30, 2010, Vanderwall filed objections to M.C.’s discovery requests. One of Vanderwall’s objections was that interrogatories 9 and 10 were inappropriate because, Vanderwall asserted, the Alabama Medical Liability Act, § 6-5-480 et seq. and § 6-5-540 et seq., Ala.Code 1975 (“the AMLA”),[2] which he argued applies, and specifically § 6-5-551, Ala.Code 1975, prohibits “conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission.”
On January 14, 2011, M.C. filed a motion to compel discovery. In the motion, M.C. contended that “[tjhis case is not a medical malpractice case, but an assault and battery case alleging that [M.C.] was molested by Mr. Vanderwall.” Accordingly, M.C. argued, Vanderwall could not use the AMLA as a basis on which to refuse to answer M.C.’s interrogatories concerning other acts. Vanderwall responded with a motion for a protective order in which he argued that the AMLA did apply to M.C.’s action and that, therefore, under § 6-5-551, he should not be obligated to respond to M.C.’s discovery requests that sought information about other acts.
On March 8, 2011, the trial court held a hearing on M.C.’s motion to compel discovery. Following the hearing, the parties submitted additional materials and arguments concerning the issue.
On January 6, 2012, Tallassee Rehab filed a “Petition and Motion” seeking a ruling from the trial court that M.C.’s action was governed by the AMLA. On January 26, 2012, Vanderwall filed a joinder in Tallassee Rehab’s “Petition and Motion.” On February 8, 2012, M.C. filed a response in opposition to the motion. On April 6, 2012, the trial court held a hearing on the defendants’ joint motion seeking a ruling that the action was governed by the AMLA. On April 7, 2012, the trial court entered an order allowing M.C. 14 days to amend her complaint to add a count seeking a judgment declaring that general tort-law principles pertaining to assault and *529 battery and negligent or wanton hiring governed her claims for relief and that the AMLA was not the law that applied to her claims for relief against the defendants.
On April 20, 2012, M.C. filed an amended complaint in which she sought a judgment declaring “that the AMLA does not apply” to the claims she asserted against Vanderwall and Tallassee Rehab. The defendants filed answers to the amended complaint.
On November 13, 2012, M.C. filed a motion to dismiss her claim against Tallas-see Rehab. The trial court entered an order on December 4, 2012, dismissing the claims against Tallassee Rehab with prejudice, and the ease proceeded against only Vanderwall.
On April 19, 2013, M.C. filed a motion for a partial summary judgment as to her declaratory-judgment “claim”—i.e., a ruling that general tort-law principles governing assault and battery claims, rather than the AMLA, applied to her assault and battery claims against Vanderwall. Subsequently, on May 9, 2013, Vanderwall filed a motion for a partial summary judgment in his favor as to the same “claim.” That is, Vanderwall sought a decision by the trial court that the AMLA did apply to M.C.’s assault and battery claims against him.
On July 2, 2013, the trial court held a hearing on the motions for a partial summary judgment and on M.C.’s motion to compel discovery. On August 29, 2013, the trial court entered an order granting M.C.’s motion for a partial summary judgment, stating, in pertinent part:
“The Court finds that the Motion for Partial Summary Judgment filed on behalf of [M.C.] is due to be granted and the Court finds that the Alabama Medical Liability Act is not applicable to this case. It is hereby ORDERED and ADJUDGED that the said Motion for Partial Summary Judgment filed on behalf of the Plaintiff, [M.C.], is due to be and is hereby GRANTED, related to Count III, Declaratory Judgment Relief, only. The Court holds that under the facts of this case, none of the provisions of the Alabama Medical Liability Act, including, but not limited to § 6-5-551, are applicable to this case.
“The Court further finds that this matter involves a controlling question of law as to which there are substantial grounds for a difference of opinion, that an immediate appeal from the Order would materially advance the ultimate termination of litigation, and that the appeal would avoid protracted and expensive litigation.[3] The Court further makes a specific and express determination that there is no just reason for delay and that said judgment shall be entered as a final judgment pursuant to Rule 54(b) of the Alabama Rules of Civil Procedure. This Order does not apply to any other Counts contained within the Plaintiffs Complaint.”
On the same day, the trial court entered an order on M.C.’s motion to compel discovery, and it provided, in pertinent part:
“This cause came before the Court for hearing on the Motion to Compel filed by [M.C.]. Based upon the Court’s determination that the Aabama Medical Liability Act is not applicable to this case, the Court finds as follows:
*530 “1. [Vanderwall] is hereby ordered to provide responses to Interrogatories 9 and 10 propounded by [M.C.], which seek complaints wherein other individuals have asserted that they were inappropriately touched by [Vanderwall], as well as the complainant’s identity.”
Vanderwall appeals the partial summary judgment in favor of M.C. Vanderwall also petitions this Court for a' writ of mandamus directing the trial court to vacate both the partial summary judgment for M.C. and its order granting M.C.’s motion to compel discovery of other acts.

II. Analysis

A. Vanderwall’s Appeal (case no. moon)

It is incumbent upon us first to address the “vehicles” by which Vander-wall seeks appellate review of the trial court’s orders. As noted, Vanderwall has filed an appeal from the partial summary judgment in favor of M.C., an order the trial court purportedly certified as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.[4] Even though neither party has raised- the issue of the appropriateness of the trial court’s Rule 54(b) certification, the appropriateness of that certification implicates the fundamental issue of this Court’s jurisdiction to entertain the appeal; it is therefore an issue we consider ex mero motu. Summerlin v. Summerlin, 962 So.2d 170, 172 (Ala.2007) (determining ex mero motu that a Rule 54(b) certification was not appropriate under the facts of the case).
It is well established that, “ ‘for a Rule 54(b) certification of finality to be effective, it must fully adjudicate at least one claim or fully dispose of the claims as they relate to at least one party.’ ” Certain Underwriters at Lloyd’s, London v. Southern Natural Gas Co., 939 So.2d 21, 28 (Ala.2006) (quoting Haynes v. Alfa Fin. Corp., 730 So.2d 178, 181 (Ala.1999) (emphasis omitted)). A trial court’s determination upon a request by an injured party for a declaration as to what law or legal principles govern the injured party’s claims against an alleged wrongdoer, even if that request is framed as a separate “count” in a complaint, is rarely, if ever, appropriate for certification as a final judgment under Rule 54(b). This is clearly so when there remain pending in the wake of any such determination claims by the plaintiff against the defendant for monetary, injunctive, or other relief based upon that law and the set of facts to which that law is claimed to be applicable. In such a case, the determination as to applicable law is but a subsidiary step on the path to the full adjudication of the plaintiffs cause of action against the alleged wrongdoer.
To qualify as a judgment by a trial court that is amenable to execution and appeal, a decision by a trial court must be one that decides the substantive rights of the parties. This Court stated in McCulloch v. Roberts, 290 Ala. 303, 305, 276 So.2d 425, 426 (1973) (quoting Carter v. Mitchell, 225 Ala. 287, 293, 142 So. 514, 519 (1932)), that “ ‘[t]he test of the finality of a decree sufficient to support an appeal is that it ascertains and declares the rights of the parties....’” In Lunceford v. Monumental Life Insurance Co., 641 So.2d *531 244, 246 (Ala.1994) (quoting Bean v. Craig, 557 So.2d 1249, 1253 (Ala.1990)), we observed that “[a] final judgment is an order ‘that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved.’ ” .See also Jewell v. Jackson & Whitsitt Cotton Co., 331 So.2d 623, 625 (Ala.1976) (“A final judgment is a terminative decision by a court of competent jurisdiction which demonstrates there has been complete adjudication of all matters in controversy • between the litigants within-the cognizance of that court. That is, it must be conclusive and certain in itself.”); State v. Brantley Land, L.L.C., 976 So.2d 996, 999 (Ala.2007) (“ ‘ “Only a fully adjudicated whole claim against a party may be certified under Rule 54(b).” ’ ” (quoting James v. Alabama Coalition for Equity, Inc., 713 So.2d 937, 942 (Ala.1997), quoting in turn Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., 813 F.2d 81, 84 (5th Cir.1987) (emphasis omitted))).
As this Court stated in Banyan Corp. v. Leithead, 41 So.3d 51, 54 (Ala.2009), a trial court errs in certifying an order as a final, appealable judgment under Rule 54(b) when “the order .,. did not completely dispose of any of the substantive claims in th[e] case.” Professors Wright and Miller put it this way:
“It would not be far amiss to think of Rule 54(b) as involving matters separate from all that remains, while [28 U.S.C.] § 1292(b) involves matters that are central to all that remains. And so Rule 54(b) cannot be used to enter judgment on deciding claims closely related to claims that remain,...”
16 Charles Alan Wright et al., Fed. Prac. & Proc. § 3929.1 (3d ed.2012).
Echoing Professors Wright and Miller, the United States Court of Appeals for the Eighth Circuit has explained that “[a] declaration of rights is not an appealable order, in the absence of a permissive interlocutory appeal under 28 U.S.C. § 1292(b), when claims to injunctive relief or damages remain.” National Com Growers Ass’n, Inc. v. Bergland, 611 F.2d 730, 733 (8th Cir.1980) (emphasis added). And the United 'States Court of Appeals for the Third Circuit has explained that Rule 54(b) “cannot bé invoked to certify a partial summary judgment as final when a plaintiff seeks to recover for the same loss on different theories and the district court has resolved its claim on less than all the theories advanced.” Gerardi v. Pelullo, 16 F.3d 1363, 1368 (3d Cir.1994).
In.this case, the ruling on the declaratory-judgment count of M.C.’s complaint did not adjudicate a “claim” that provided any substantive relief to any party; it simply determined what law would apply .to M.C.’s claims against Vanderwall. The trial court’s declaration was substantively.no different than a determination by any trial court as to what law governs a plaintiffs substantive claims. Such a determination does not constitute an adjudication of a claim for relief.
In short, as this Court stated in Baker v. Bennett, 644 So.2d 901, 903 (Ala.1994):
“Rule 54(b) allows the court to direct the entry of a final judgment as to one or more, but fewer than all, of the claims or parties upon an express determination that- there is no just reason for delay and upon an express direction for the entry of judgment. The ruling of the trial court involved in [Vanderwall’s] appeal granted no relief to anyone, and it did not determine a separate claim. The’ facts here do not present the type of situation that Rule 54(b) was intended to cover. Therefore, the trial court’s ruling was not a final judgment and was not appealable.” . .
*532 “ ‘When it is determined that an order appealed from is not a final judgment, it is the duty of the Court to dismiss the appeal ex mero motu.’ ” State v. Lawhorn, 830 So.2d 720, 725 (Ala.2002) (quoting Powell v. Republic Nat’l Life Ins. Co., 293 Ala. 101, 102, 300 So.2d 359, 360 (1974)). Thus, Vanderwall’s appeal of the trial court’s August 29, 2013, order, entering a partial summary judgment for M.C. is due to be dismissed.

B. Vanderwall’s Petition for a Writ of Mandamus (case no. 1130036)

In his petition for writ of mandamus, Vanderwall seeks relief in two respects. First, he seeks to use a writ of mandamus at this preliminary juncture to challenge the trial court’s interlocutory decision that general tort-law principles, rather than the AMLA, will govern the litigation of M.C.’s claims against him. To the extent it is aimed at preempting the entry of a final judgment against him based on general tort-law principles, Van-derwall’s petition to this Court for a writ of mandamus is an inappropriate use of the writ.
“Mandamus is an extraordinary remedy and will be granted only where there is ‘(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991). This Court will not issue the writ of mandamus where the petitioner has ‘ “full and adequate relief’ ’ by appeal. State v. Cobb, 288 Ala. 675, 678, 264 So.2d 523, 526 (1972) (quoting State v. Williams, 69 Ala. 311, 316 (1881)).”
Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala.2003). Assuming for the sake of argument that the trial court is in error in not applying the AMLA to M.C.’s-claims against Vanderwall and, further, that the trial court eventually enters ■a final judgment against Vanderwall on that basis, Vanderwall would at that time have an adequate remedy by way of an appeal. As in any appeal, he would be able to challenge both the legal holdings of the trial court and its factual findings. Thus, to the extent it relates to the potentially erroneous nature of some final judgment yet to be entered against Vander-wall, Vanderwall’s petition for a writ of mandamus is due to be denied.
That said, we also must address Vander-wall’s request for mandamus relief as it relates to the discovery issue. Specifically, Vanderwall contends that the ti-ial court’s August 29, 2013, order granting M.C.’s motion to compel discovery against Van-derwall violates the prohibition on discovery of other acts and omissions stated in § 6-5-551 of the AMLA.
This Court has held that, generally, appellate review of a discovery order may be afforded by the appeal of a final judgment in the case but that, “[i]n certain exceptional cases, ... review by appeal of a discovery order may be inadequate.... ” Ex parte Ocwen Fed. Bank, FSB, 872 So.2d at 813. One of the “exceptional cases” the Ocwen Court noted is “when a privilege is disregarded.” This Court has previously determined that
“[t]he exemption from discovery offered by § 6-5-551, Ala.Code 1975, which prohibits a party in a medical-malpractice action ‘from conducting discovery with regard to any other act or omission,’ i.e., any act or omission other than the one that allegedly renders the health-care provider liable, is treated as a privilege for purposes of determining whether in issuing the discovery order the trial court has disregarded a privi *533 lege, thus warranting review of the discovery order by way of a petition for a writ of mandamus.”
Ex parte Gentiva Health Servs., Inc., 8 So.3d 943, 946-47 (Ala.2008). Thus, the trial court’s August 29, 2013, discovery order is reviewable by a petition for a writ of mandamus.
Whether the information M.C. requested in interrogatories 9 and 10 pertaining to other acts allegedly committed by Vanderwall is shielded from discovery under § 6-5-551 necessarily requires us to determine whether the AMLA governs M.C.’s assault and battery claims against Vanderwall. If the AMLA applies, then the trial court erred in granting M.C.’s motion to compel discovery and Vander-wall’s petition for the writ of mandamus is due to be granted. If the AMLA does not apply, then Vanderwall’s mandamus petition is due to be denied.
“The AMLA applies ‘[i]n any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care.’ § 6-5-548(a), Aa.Code 1975.” Mock v. Allen, 783 So.2d 828, 832 (Ala.2000) (emphasis added). Section 6-5-542, Ala.Code 1975 defines a “health care provider” as “[a] medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other health care provider as those terms are defined in Section 6-5-481.” Section 6-5-481(8) in turn defines “other health care providers” as “[a]ny professional corporation or any person employed by physicians, dentists, or hospitals who are directly involved in the delivery of health care services.”
This Court previously has stated that, “although perhaps not perfectly consistent, our caselaw considering § 6-5-481(8), and especially our more recent decisions such as Cackowski [v,- Wal-Mart Stores, Inc., 767 So.2d 319 (Ala.2000) ], and Anderson [v. Alabama Reference Labs., 778 So.2d 806 (Ala.2000) ], generally stand for the following proposition: a corporation or person seeking to be considered an ‘other health care provider’ under the AMLA need not prove an employer/employee relationship or a contractual relationship with a physician, dentist, or hospital to establish that it or he is ‘employed’ by a physician, dentist, or hospital, although such a'relationship would certainly fall within the statute; however, at a minimum a physician, dentist, or hospital must have made use of that corporation or person in the physician’s, dentist’s, or hospital’s delivery of health-care services to the plaintiff-patient.”
Ex parte Partners in Care, Inc., 986 So.2d 1145, 1148 (Ala.2007) (emphasis omitted).
We are not asked in this case to revisit those cases in which this Court has held that the requirement that a person or corporation be “employed by” a physician, dentist, or hospital does not require an employment or equivalent contractual relationship, but requires only that the physician (or dentist or hospital) “make use of’ the person (or corporation) in question. See, e.g., Cackowski v. Wal-Mart Stores, Inc., 767 So.2d 319, 324-25 (Ala.2000) (holding that a pharmacist’s filling of a doctor’s prescription for a patient is part of the physician’s treatment of his or her patient so that the pharmacist was included within the AMLA definition of “other health care provider”); see also Ex parte Partners in Care, Inc., 986 So.2d at 1148 (describing Anderson v. Alabama Reference Labs., 778 So.2d 806, 810 (Ala.2000), as a case in which this Court held “that a medical ’ laboratory was an ‘other health care provider’ because its testing of a specimen was an integral part of the physi- *534 dan’s delivery of health-care services to the patient”).[5]
Vanderwall argues that the complained-of conduct allegedly occurred during the delivery of professional services and that, therefore, “the AMLA and its discovery provisions apply to the case regardless of the description of the cause of action under which [M.C.] has filed.” M.C. responds, and the trial court concluded, that “[t]he AMLA applies only to medical malpractice actions ..., which by definition are actions for redress of a medical injury.” M.C. states in her brief to this Court that “[her] position is that the mere fact that she was present for physical therapy does not place her claim under the A.M.L.A.” She argues that the alleged sexual assault “bear[s] no relation to the medical services provided,” and that, therefore, those acts “cannot be deemed ‘professional services.’ ”
Vanderwall cites Mock in support of his position that this case is governed by the AMLA. Like M.C. in the present case, the plaintiff in Mock argued “that the AMLA does not apply to his case because ‘[t]he acts of intentional sexual assault of which [he] complains were for no medical reason.’ ” 783 So.2d at 832. This Court, however, stated as follows in Mock with respect to the applicability of the AMLA:
“[M]ost of the reported cases where appellate courts have declined to hold that the physician’s conduct constituted professional malpractice involved either an intimate sexual relationship or sexual misconduct having no connection with the rendering of professional services. See St. Paul Ins. Co. of Illinois v. Cromeans, 771 F.Supp. 349, 352-53 (N.D.Ala.1991) (physician’s sexual conduct toward minor patients—masturbating in front of them, fondling the patients, attempting to convince patients to have sex with him—did not constitute professional services, and, thus, physician’s conduct was not covered by his malpractice insurance); McQuay v. Guntharp, 336 Ark. 534, 540-41, 986 S.W.2d 850, 853 (1999) (physician’s fondling of a patient’s breasts while using a stethoscope to listen to her heart and lungs did not constitute malpractice); Atienza v. Taub, 194 Cal.App.3d 388, 393, 239 Cal.Rptr. 454, 457 (1987) (sexual relationship between patient and physician who was treating her for an industrial injury did not constitute malpractice); Odegard v. Finne, 500 N.W.2d 140, 143 (Minn.Ct.App.1993) (sexual relationship between patient and physician who was treating her for colitis was not malpractice); Mindt v. Winchester, 151 Or.App. 340, 345, 948 P.2d 334, 336 (1997) (sexual relationship between patient’s wife and the physician treating the patient for infertility was not malpractice); New Mexico Physicians Mut. Liability Co. v. La-Mure, 116 N.M. 92, 95-96, 860 P.2d 734, 736-37 (1993) (physician’s sexual assault of patient he was treating for an infected thumb was not malpractice and thus was not covered under his malpractice insurance); Standard Fire *535 Ins. Co. v. Blakeslee, 54 Wash.App. 1, 9, 771 P.2d 1172, 1176 (1989) (sexual assault of patient by her dentist was not malpractice and thus was not covered by dentist’s malpractice insurance).
“By contrast, in cases where the alleged sexual misconduct occurs as part of a physician’s examination and/or treatment of a patient, the conduct is considered to have occurred during the delivery of professional services, and is therefore cognizable as a medical-malpractice claim. See Hagan v. Antonio, 240 Va. 347, 397 S.E.2d 810 (1990) (physician’s act of fondling patient’s breasts and making improper comments during what was supposed to be a routine breast examination occurred during the delivery of professional services). Here, Mock went to Dr. Allen complaining of pain to his neck, back, left hip/groin area, and left leg. It was incumbent upon Dr. Allen to examine the painful areas thoroughly in order to diagnose Mock’s complaint. Moreover, Dr. Allen testified that he wanted to rule out radi-culopathy, a nerve condition originating in the spinal area and extending through the groin and into the leg. Given these circumstances, Dr. Allen’s alleged sexual misconduct occurred ivhile he was providing professional services and/or treating Mock’s physical injuries. Accordingly, the misconduct Mock accuses Dr. Allen of falls unthin the ambit of the AMLA.”
783 So.2d at 832-33 (emphasis added).
'Conversely, M.C. argues “sexual molestation could not be part of [her] examination or treatment” and that,
“[e]ven if Mr. Vanderwall was deemed to be a ‘healthcare provider’ as defined by the A.M.L.A., his actions are outside the scope of the A.M.L.A. The Alabama Supreme Court has specifically rejected Mr. Vanderwall’s argument that all claims against a healthcare provider are covered by the A.M.L.A., stating specifically, ‘We do not agree that the AMLA applies to all .claims against health-care providers arising out of the relationship between the healthcare provider and the patient.’ The A.M.L.A. applies only to medical malpractice actions in the context of patient-doctor and patient-hospital relationships, which by definition are actions for redress of a medical injury. Ex parte Addiction and Mental Health Services, Inc., d/b/a Bradford Health Services, 948 So.2d 533, 53[5] (Ala.2006),”
M.C.’s argument and Vanderwall’s invocation of Mock for the contrary position necessitate a reexamination of that decision in the present case.
This Court relied upon Mock in O’Rear v. B.H., 69 So.3d 106 (Ala.2011):
“Dr. O’Rear bases his argument on his contention that all B.H.’s causes of action arose in connection with Dr. O’Rear’s providing B.H. with medical services. In this' context, he relies on Mock v. Allen, 783 So.2d 828 (Ala.2000), in which the Court held that the claims of the plaintiff, Mock, against his doctor, Allen, for sexual assault were governed by the Act. In Mock, Mock alleged that his treating physician touched him improperly during his treatment for various injuries to his head, spine,- and hip that resulted from an automobile accident. In Mock, there was no instance of alleged improper touching that did not occur outside the doctor’s office or hospital during a scheduled treatment. Thus, Mock stands for the principle that a sexual assault that occurs during the course of medical treatment is subsumed under the proof requirements of the Act. Similarly, we note that this Court has held that other actions that *536 occur during the course of medical treatment are subsumed under the Act. See, e.g., Mobile Infirmary v. Delchamps, 642 So.2d 954 (Ala.1994) (negligence and breach-of-warranty claims are governed by the Act); Benefield v. F. Hood Craddock Clinic, 456 So.2d 52 (Ala.1984) (fraud claims subsumed by the Act); and Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438 (1972) (assault and battery governed by the Act). However, in each of these cases, as in Mock, the cause of action arose as a direct result of a particular medical treatment by the defendant medical-service provider. Thus, we agree with Dr. O’Rear that his acts of prescribing medications in return for sexual conduct that occurred while B.H. was being treated by Dr. O’Rear are governed by the proof requirements of the Act.”
Id. at 114-15 (emphasis added).
Under Mock and O’Rear, the pertinent issues are simply place and time. Did the alleged sexual assault occur within “the doctor’s office or hospital” and did it occur “while [the defendant] was providing professional services”? There is no dispute in this case that the place and time requirements articulated in Mock and O’Rear are satisfied; the alleged sexual misconduct occurred in the place and during the time that Vanderwall otherwise was engaged in treating M.C. for her back pain. Thus, under the interpretation of the AMLA enunciated in Mock and reiterated in O’Rear, M.C.’s allegation of sexual misconduct would be governed by the proof requirements of the AMLA.
We cannot in good conscience, however, continue to adhere to the rule articulated in Mock and O’Rear. We previously have observed that stare decisis “ ‘is a golden rule, not an iron rule.’ ” Goldome Credit Corp. v. Burke, 923 So.2d 282, 292 (Ala.2005) (quoting Ex parte Nice, 407 So.2d 874, 883 (Ala.1981) (Jones, J., dissenting)). In those rare cases where, in retrospect, a rule announced in a previous case is not plausible, the doctrine of stare decisis does not prevent this Court’s reexamination of it.
“Although we have a healthy respect for the principle of stare decisis, we should not blindly continue to apply a rule of law that does not accord with what is right and just. In other words, while we accord ‘due regard to the principle of stare decisis,’ it is also this Court’s duty ‘to overrule prior decisions when we are convinced beyond ... doubt that such decisions were wrong when decided or that time has [effected] such change as to require a change in the law.’ Beasley v. Bozeman, 294 Ala. 288, 291, 315 So.2d 570, 572 (1975) (Jones, J., concurring specially).”
Ex parte State Farm Fire & Cas. Co., 764 So.2d 543, 545-46 (Ala.2000) (footnote omitted). “As strongly as we believe in the stability of the law, we also recognize that there is merit, if not honor, in admitting prior mistakes and correcting them.” Jackson v. City of Florence, 294 Ala. 592, 598, 320 So.2d 68, 73 (1975).[6]
In this instance, Vanderwall has asked us to apply an interpretation of the *537 AMLA from cases that exalt a broad reading of the statute over the plain text. Mock and O’Rear posit that the legislature intended the AMLA to apply to any action in which the alleged injury was inflicted by a medical provider at the same place and time as medical treatment, rather than applying only to actions in which the alleged injury occurred became of medical treatment. M.C. challenges that interpretation. She argues that the AMLA was intended to address alleged violations of a “standard of care” applicable to “medical treatment” and that “sexual molestation of a female by a male physical therapist is not a matter of ‘medical injury" subject to the AMLA when the physical therapist admits that there is no medical reason to touch the female’s breasts or genitalia.” We agree with M.C. We do not believe the legislature intended for the protections afforded under the AMLA to apply to health-care providers who are alleged to have committed acts of sexual assault; such acts do not, by any ordinary understanding, come within the ambit of “medical treatment” or “providing professional services.”
The dissenting opinion in Mock written by Justice Lyons (in which Justice Lyons quotes an earlier writing in the case from Justice See) explains the correct interpretation of the AMLA:
“‘The Legislature declared that it enacted the AMLA in response to increasing health-care costs caused by “the increasing threat of legal actions for alleged medical injury.” Ala.Code 1975, § 6-5-540. The AMLA applies to actions against a health-care provider alleging a “breach of the standard of care.” Ala.Code 1975, § 6-5-540 et seq. A breach of the standard of care is the “fail[ure] to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.” § 6-5-548. Thus, the AMLA applies to conduct that is, or that is reasonably related to, the provision of health-care services allegedly resulting in a medical injury. Just as the Alabama Legal Services Liability Act does not apply to every action against a person who is a lawyer, see Cunningham v. Langston, Frazer, Sweet & Freese, P.A., 727 So.2d 800 (Ala.1999), the AMLA does not apply to every action against a person who is a doctor, see Thomasson v. Diethelm, 457 So.2d 397 (Ala.1984). It does not, I believe, apply to an action alleging sexual molestation, where the health-care provider concedes that the acts complained of were not medically relevant. Although Mock’s claims arise out of conduct that took place at a time when there was a doctor-patient relationship for the purpose of examination and treatment, see Thomasson, that fact alone cannot subject to the provisions of the AMLA all conduct by the doctor, however unrelated to the provision of medical services.’ ”
Mock, 783 So.2d at 836-37 (Lyons, J., dissenting) (emphasis added). See also Ex parte Addiction & Mental Health Servs., Inc., 948 So.2d 533, 535 (Ala.2006) (“‘By definition, a “medical-malpractice action” is one for redress of a “medical injury.” See § 6-5-540 (purpose of the [AMLA] is to regulate actions for “alleged medical injury”). ...’” (quoting Taylor v. Smith, 892 So.2d 887, 893 (Ala.2004))).
From the foregoing, it is clear that the AMLA is not just concerned with who committed the alleged wrongful conduct or when and where that conduct occurred, but also with whether the harm occurred because of the provision of medical ser *538 vices. Vanderwall testified that there was no therapeutic or medical reason for him to touch M.C.’s breasts or her genitals in the course of treating her for back pain. Consequently, it is undisputed that M.C.’s allegation of injury does not stem from the provision of medical services. Therefore,
“[although [Vanderwall’s] acts might have occurred during the same time frame within which he was providing some medical care to [M.C.], and although [Vanderwall’s] acts may have occurred in the same location where [Vanderwall] provide[d] medical care to patients, [Vanderwall’s] acts in [allegedly sexually assaulting M.C. instead of ’administering care for her back pain] were not part of providing medical care to [M.C.] so as to be governed by the AMLÁ.”
O’Rear, 69 So.3d at 122 (Murdock, J., concurring in the result).
Our conclusion today is buttressed by numerous cases from other jurisdictions that have concluded that sexual molestation is not included within any ordinary understanding of the provision of medical services. In Kaufmann v. Schroeder, 241 Ill.2d 194, 349 Ill.Dec. 151, 946 N.E.2d 345 (2011), for example, the Illinois Supreme Court had to determine whether a plaintiffs action alleging that a doctor sexually assaulted her while she was under sedation was time-barred based on the application of the Illinois Tort Immunity Act. As the court explained: “The ultimate issue before this court ... is whether the injuries for which Kaufmann seeks recovery in her claims against [the hospital] are injuries ‘arising out of patient care’ within the meaning of section 8-101(b) of the Act.” 241 Ill.2d at 199, 349 Ill.Dec. at 154, 946 N.E.2d at 348. The court concluded that Kaufmann’s action fell outside this provision, reasoning:
“[I]n Orlak [v. Loyola University Health System, 228 Ill.2d 1, 319 Ill.Dec. 319, 885 N.E.2d 999 (2007) ], this court reiterated that ‘arising out of patient care’ did not encompass ‘but for’ causation. Rather, it meant that the injury had ‘ “[t]o originate; to stem (from),” or “to result (from)” ’ the patient’s medical care or treatment.. See Orlak, 228 Ill.2d at 14-15, 319 Ill.Dec. 319, 885 N.E.2d 999 (quoting Black’s Law Dictionary 115 (8th ed.2004)).
“In the case before this court, Kauf-mann did not allege that she was injured because of the medical treatment she received. In other words, she did not claim that the ‘unnecessary’ exam and sedation she received during her hospitalization harmed her in any way. Rather, the harm resulted from the sexual assault. The sedation that was given and the ‘unnecessary’ exam (if one was, in fact, performed) were not part of Kaufmann’s medical treatment, but simply a means by which Schroeder was able to accomplish his sexual assault on Kaufmann.
“In sum, we find that Kaufmann’s injury arose out of Dr. Schroeder’s sexual assault and not any medical care she received from him. The sexual assault, itself, was not medical care, nor was there even any pretense that Dr. Schroeder’s sexual acts were necessitated by, or in any way related to, the medical care he was providing to Kauf-mann. There was no suggestion by Schroeder that there existed a medical reason for his actions.”
241 Ill.2d at 200-01, 349 Ill.Dec. at 155, 946 N.E.2d at 349.
In Burke v. Snyder, 899 So.2d 336, 340 (Fla.Dist.Ct.App.2005), a Florida district court held that “a claim of sexual misconduct by a doctor during a medical examination or procedure is not a claim ‘arising *539 out of the rendering of ... medical care or services’ ” so as to fall within Florida’s medical-malpractice statute. The court reasoned:
“In this case, ... the complaint makes no mention of any pretense of medical care by the doctor or any psychological manipulation or seduction of the plaintiff. The plaintiff does not allege that Dr. Snyder engaged in sexual conduct under the guise of medical diagnosis, treatment or care. She does not allege that she was induced to have sexual relations with Dr. Snyder in furtherance of medical diagnosis, treatment, or care. On the contrary, she alleges that the sexual assault occurred ‘suddenly and unexpectedly' within minutes after the start of her first office visit with Dr. Snyder.”
899 So.2d at 340.
In Doe v. Cherwitz, 894 F.Supp. 344 (S.Diowa 1995), the United States District Court for the Southern District of Iowa concluded that a plaintiffs allegation of sexual misconduct against a doctor did not fall within the coverage of Iowa’s medical-malpractice statute, reasoning:
“The injuries alleged in the instant case, according to plaintiffs allegations and evidence presented in connection with the previous motions for summary judgment, arose out of forcible sexual, intercourse perpetrated by defendant Cher-witz against the will of the plaintiff when she was undergoing a medical examination by Cherwitz.
“Section 614.1(9) is, by its terms, limited to claims ‘arising out of patient care.’ Defendants rely on one sentence in Langner [v. Simpson, 533 N.W.2d 511 (Iowa 1995) ]: ‘All of the claims in the Langners’ petition arose out of injuries allegedly suffered while Kathy was under the care of Simpson and the hospital.’ Langner, 533 N.W.2d at 516. Defendants read the phrase ‘while Kathy was under the care of Simpson and the hospital’ too broadly. That language must be read in the context of the facts of the Langner case. I do not believe the Iowa Supreme Court meapt to hold, or would hold if this case were presented to it, that section 614.1(9) applies to willful non-treatment tortious activity by the physician, simply because it occurred when the patient was .seeing the physician for medical reasons. Obviously, that is not what the legislature intended in enacting the statute, and its careful choice of language—arising from patient care—clearly limits the protection of the statute to claims resulting from patient care activity. Rape is not patient care activity. I believe the Iowa Supreme Court would hold that willful tortious activity outside the realm of patient care, such as that alleged in this case, is not governed by the statute.”
894 F.Supp. at 345-46.
In Descant v. Administrators of Tulane Educational Fund, 639 So.2d 246, 250 (La.1994), the Louisiana Supreme Court held that the state’s medical-malpractice act
“does not protect the provider from all acts of misconduct between the provider and his patients. It is only triggered by the negligent care and treatment of the patient. Were the provider to commit an intentional tort against his patient or negligently injure his patient in a manner unrelated to medical treatment, the limitation of liability would not be available.” [7]
*540 In short, the simple fact is that sexual misconduct by a health-care provider toward a patient is not medical treatment, and it does not result in a “medical injury” as such an injury is understood under the AMLA. The AMLA addresses the provision of medical services to patients and failures to meet the applicable standard of care in providing those services. M.C.’s action against Vanderwall is not concerned with such matters. Accordingly, the trial court did not err in granting M.C.’s motion to compel discovery on the ground that the AMLA does not govern M.C.’s claims against Vanderwall.

III. Conclusion

Based on the foregoing, we dismiss Van-derwall’s appeal of the partial summary judgment as being.from a nonfinal judgment. We deny Vanderwall’s petition for a writ of mandamus both insofar, as it challenges the partial summary judgment in favor of M.C. and insofar as it challenges the order granting M.C.’s motion to compel discovery.
1130036—PETITION DENIED.
MOORE, C.J., and BOLIN, PARKER, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J.j concurs specially. ■
STUART, J., concurs in the result.
SHAW, J., dissents.
1130041—APPEAL DISMISSED.
MOORE, C.J.', and BOLIN, PARKER, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., concurs specially.
STUART, J., concurs in the result.

. M.C. complained to Tallassee Rehab about Vanderwall’s actions, and, as a result of the accusation, Tallassee Rehab placed Vander-wall on indefinite suspension without pay. Vanderwall left Tallassee Rehab’s employment in December 2009.

. See George H. Lanier Mem‘l Hosp. v. Andrews, 901 So.2d 714, 721 (Ala.2004) (explaining the relationship between the provisions of the AMLA set out in § 6-5-480 et seq. and those set out in § 6-5-540 et seq.).

. This sentence appears to presage the certification of a question of law for permissive appellate review under Rule 5, Ala. R.App. P. No such question is stated in the trial court’s order, however. See generally Rule 5(a), Ala. R.App. P. ("The trial judge must include in the certification a statement of the controlling question of law.”). Moreover, whether the AMLA is applicable to any given set of facts is not a "question of law” within the meaning of Rule 5(a).

. ■ Rule 54(b) provides, ip relevant part:
“When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.”

. M.C. does, however, argue that, for someone who does not fall within any of the categories expressly named in § 6-5-542 to be considered a health-care provider for purposes of the AMLA, that person must be “carrying out the physician’s orders and be inextricably linked to a physician's treatment of his patients.” M.C.’s position in this regard focuses solely on the fact that the particular manner in which Vanderwall touched M.C. was not ordered by a physician; she does not argue that, in general, the provision of physical-therapy services upon the referral of a physician is not covered by the AMLA. The issue thus framed in this case cannot be differentiated from the issue discussed below— whether a claim of sexual misconduct or assault by someone who would otherwise be deemed to a be a health-care provider is governed by the AMLA.

. We also note that, apart from O’Rear, there are no decisions employing the rationale of Mock and that Mock cannot be said to have created some reliance interest on the part of prospective tortfeasors. See generally Ex parte Capstone Bldg. Corp., 96 So.3d 77, 89 n. 8 (Ala.2012) (noting that a court may consider " 'the plausibility of the existing interpretation of a statute, the extent to which that interpretation has been fixed in the fabric of the law, and the strength of arguments for changing the interpretation’ ” (quoting 20 Am.Jur.2d Courts § 131 (2005))); see also 20 Am.Jur.2d Courts § 136 (2005) ("The application of stare decisis is less compelling in tort cases than in property or contract settings.”).

. In addition to cases directly addressing a state’s medical-liability act,'“the majority of jurisdictions have concluded that professional liability policies do not provide coverage for health care practitioners who sexually assault their patients” because such acts do not con *540 stitute the provision of "professional services.” Physicians Ins. Co. v. Pistone, 555 Pa. 616, 621, 726 A.2d 339, 342 (1999).