SHAW, Justice (dissenting).
I respectfully dissent.
In my writing in Ex parte Vanderwall, 201 So.3d 525 (Ala. 2015), I stated:
*14 "In Mock v. Allen, 783 So.2d 828 (Ala. 2000), this Court rejected the argument that the Alabama Medical Liability Act, § 6-5-480 et seq. and § 6-5-540 et seq., Ala. Code 1975 ('the AMLA'), '[did] not apply ... because "[t]he acts of intentional sexual assault of which [the patient] complains were for no medical reason" ' and were 'outside the scope of the physician's professional services and did not constitute professional malpractice.' Instead, the rule has been as follows:
" '[M]ost of the reported cases where appellate courts have declined to hold that the physician's conduct constituted professional malpractice involved either an intimate sexual relationship or sexual misconduct having no connection with the rendering of professional services....
" 'By contrast, in cases where the alleged sexual misconduct occurs as part of a physician's examination and/or treatment of a patient, the conduct is considered to have occurred during the delivery of professional services, and is therefore cognizable as a medical-malpractice claim....'
" 783 So.2d at 832-33 (emphasis added)."
Ex parte Vanderwall, 201 So.3d at 542 (Shaw, J., concurring in case no. 1130041 and dissenting in case no. 1130036). Under Mock v. Allen, 783 So.2d 828 (Ala. 2000), the Alabama Medical Liability Act, § 6-5-480 et seq. and § 6-5-540 et seq., Ala. Code 1975 ("the AMLA"), would apply in this case. However, this Court in Ex parte Vanderwall sua sponte overruled Mock. The Court stated: "The AMLA addresses the provision of medical services to patients and failures to meet the applicable standard of care in providing those services." Ex parte Vanderwall, 201 So.3d at 540. The AMLA was not "intended," the Court said, "to apply to health-care providers who are alleged to have committed acts of sexual assault; such acts do not, by any ordinary understanding, come within the ambit of 'medical treatment' or 'providing professional services.' " 201 So.3d at 537.
Tombigbee Healthcare Authority d/b/a Bryan W. Whitfield Memorial Hospital ("the hospital") does not ask this Court to overrule Ex parte Vanderwall; instead, it argues that, under the rationale of that decision, the AMLA would still apply. In the instant case, the duties allegedly breached by the hospital are stated in the complaint as follows: "[A] duty to the Plaintiffs to properly hire, train, supervise, and retain their employees" and "a duty to protect patients ... from harm while receiving treatment and care...." These duties of the hospital, by their very nature, are duties that arise in "the provision of medical services to patients." Ex parte Vanderwall, 201 So.3d at 540. For purposes of this claim, the hospital is not being sued for "committ[ing] acts of sexual assault." I do not read Ex parte Vanderwall as holding that this claim is outside the AMLA. Further, § 6-5-551 appears to indicate that it applies to negligent or wanton hiring, training, and supervision claims against health-care providers even if the conduct challenged did not result from acts or omissions "in providing health care." Section 6-5-551 states, in applicable part:
"In any action for injury, damages, or wrongful death ... against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action."
(Emphasis added.) See also Ex parte Ridgeview Health Care Ctr., Inc., 786 So.2d 1112, 1116 (Ala. 2000) ("[
*15 Section] 6-5-551 makes it clear that a claim against a health-care provider alleging that it breached the standard of care in hiring, training, supervising, retaining, or terminating its employees is governed by the Alabama Medical Liability Act.").
The plaintiffs also claim that the hospital is vicariously liable for any sexual assault by its former employee, Leland Bert Taylor, Jr. However, "[t]o recover against a defendant under the theory of respondeat superior, it is necessary for the plaintiff ... to establish that the act was done within the scope of the employee's employment." Hendley v. Springhill Mem'l Hosp., 575 So.2d 547, 550 (Ala. 1990) (plurality opinion). If Taylor was acting within the scope of his employment, as alleged in the complaint, then, by necessity, he was engaged in the "provision of medical services to patients," and the AMLA would apply.[6]
Thus, as the main opinion concludes, the AMLA applies to the plaintiffs' claims against the hospital. "To be clear, the application of ... the AMLA in no way denies the plaintiff a cause of action or the ability to seek damages for any alleged misconduct by the defendant. Instead ... the plaintiff's claim is litigated pursuant to certain statutorily prescribed substantive and procedural requirements." Ex parte Vanderwall, 201 So.3d at 542 (Shaw, J., concurring in case no. 1130041 and dissenting in case no. 1130036). When § 6-5-551 applies, "[a]ny party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission."
The hospital argues in its petition that "each of the Plaintiffs is barred from discovery pertaining to any of the other Plaintiffs." Petition, at 4 (footnote omitted). As the main opinion notes, under the unusual facts of this case-there are four plaintiffs and evidence regarding acts related to one plaintiff will, by necessity, be received by the others-"it would be impractical, if not impossible, to prevent each plaintiff from discovering information concerning the alleged acts by Taylor against the other plaintiffs." 260 So.3d at 6. The discovery restrictions of § 6-5-551 do not seem to anticipate a scenario where multiple plaintiffs have joined their claims in this manner and thus, by necessity, receive the same discovery. However, we have held that § 6-5-551 essentially precludes a joint action by multiple plaintiffs in the first place:
"[ Section] 6-5-551 necessarily removes from the trial court any discretion to allow the introduction, in the trial of [one plaintiff's] claims, of any evidence of [a defendant's] alleged wrongful acts and omissions as to [a co-plaintiff], whether with or without limiting instructions.... If both sets of plaintiffs are allowed to prosecute their claims in the same trial, a violation of § 6-5-551 is unavoidable."
Ex parte Brookwood Med. Ctr., 994 So.2d 264, 268 (Ala. 2008).[7]
*16 I agree with the main opinion, however, that the instant petition "has not cited any authority for its argument that the AMLA's 'other acts or omissions' language would preclude plaintiffs who have filed a joint complaint from engaging in discovery related to the same employee by whom they were all victimized." 260 So.3d at 6. However, the petition also challenges the plaintiffs' discovery requests related to wrongdoing by Taylor in regard to other patients, namely, patients who are not the plaintiffs. The hospital's motion for a protective order stated:
"Plaintiffs ... propounded their First Interrogatories to [the hospital] and therein sought expansive discovery as to [the hospital's] knowledge, and any actions it took, relating not only to Plaintiffs['] ... underlying allegations of wrongdoing as to co-Defendant Taylor, but as to any other individual who was allegedly assaulted by Taylor.
"...[The hospital] provided its responses to the aforementioned discovery and asserted appropriate objections to those discovery requests that sought to conduct discovery in violation of Ala. Code §§ 6-5-551 and 22-21-8."
(Emphasis added.)
The hospital states in its petition to this Court:
"This Petition for Mandamus concerns [the hospital's] Motion for Protective Order as to the Plaintiffs' discovery requests seeking information regarding the hiring, training, supervision and retention of Defendant Taylor as well as any complaints the Hospital received pertaining to Taylor. [Section] 6-5-551, Code of Alabama (1975) prohibits discovery of acts of omissions relating to patients other than the patient who has brought the claim. As each of the Plaintiffs is not entitled to discovery regarding the complaints of the other Plaintiffs, the Hospital's Motion for Protective Order should have been granted."
Petition, at 2 (emphasis added).
The challenge in the petition to "any" discovery regarding complaints about Taylor by persons other than the plaintiffs is not a model of clarity; the petition is mainly directed toward challenging the fact that each plaintiff will receive discovery regarding the other plaintiffs. However, the issue was raised in both the motion for a protective order and in this Court. I would grant the petition and instruct the trial court that the discovery restrictions in § 6-5-551 applied to the plaintiffs' discovery requests regarding any individual other than the plaintiffs who was allegedly assaulted by Taylor.
I also respectfully dissent from the main opinion's holding that Ala. Code 1975, § 22-21-8(b), is inapplicable in this case. That Code section states:
"All accreditation, quality assurance credentialling and similar materials shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review for accreditation, quality assurance and similar functions, purposes, or activities."
The Code section provides that "all" quality-assurance materials are protected in "any" civil action; it does not provide an exception for quality-assurance materials related to an alleged sexual assault by a *17 hospital employee against a patient. It is undisputed that the hospital investigated the allegations against Taylor and produced certain quality-assurance reports as a result of that investigation. The affidavit of Cindy Parten, quoted in the main opinion, makes clear that the information requested by the plaintiffs " 'falls within the ambit of quality assurance inasmuch as investigations of complaints relative to [Taylor] were conducted within the confidentiality afforded the quality assurance process and were intended for its protection and privacy of patients as well as employees.' " 260 So.3d at 8. She further testified that " '[i]t is essential that the discovery ... Plaintiffs seek be kept confidential to ensure that [the hospital] can continue to obtain complete and accurate information about the qualifications and conduct of its employees, both prior to employment and upon initiat[ion] of any quality assurance investigation.' " 260 So.3d at 8. It appears to me that discoverable materials gathered for quality-assurance purposes regarding Taylor are protected by § 22-21-8(b). I would grant the petition and issue a writ of mandamus directing the trial court to enter a protective order regarding those materials. I thus respectfully dissent.
On Application for Rehearing
APPLICATION OVERRULED. NO OPINION.
Stuart, C.J., and Bolin, Parker, Main, Wise, and Bryan, JJ., concur.
Shaw and Mendheim, JJ., dissent.

I see nothing indicating that Taylor's employment with the hospital involved providing non-medical services. If Taylor indeed sexually abused patients, then he was not acting in the line and scope of his employment, and the hospital could not be held vicariously liable. Hendley, 575 So.2d at 551 (holding that alleged sexual abuse by a purported agent of a hospital was an act based on wholly personal motives having no relation to the business and "a gross deviation from the purpose" of the employment).

The hospital previously petitioned this Court for mandamus review of the trial court's denial of a motion to sever; that petition was denied. Ex parte Tombigbee Healthcare Auth. d/b/a Bryan W. Whitfield Mem'l Hosp. (No. 1160707, June 30, 2017) (unpublished order). However, "the denial of relief by mandamus does not have res judicata effect." Cutler v. Orkin Exterminating Co., 770 So.2d 67, 69 (Ala. 2000). Thus, this issue will likely arise again.