Rel: May 5, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

————————————

### 1210175

————————————

**Ex parte Victor Chin, M.D., and Sportsmed Orthopedic Specialists, P.C.**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Malik Landen Woodard**

**v.**

**Sentry Insurance et al.)**

**(Jefferson Circuit Court, CV-21-902470)**

PARKER, Chief Justice.

Victor Chin, M.D., and Sportsmed Orthopedic Specialists, P.C. (collectively "the Sportsmed defendants"), are defendants in an action

brought by their patient, Malik Landen Woodard. Woodard alleged that, against his wishes, Dr. Chin obtained records of Woodard's prior psychological treatment. The Sportsmed defendants seek mandamus relief from (1) the Jefferson Circuit Court's order denying their motion to change venue based on the Alabama Medical Liability Act, § 6-5-480 et seq., Ala. Code 1975, and the Alabama Medical Liability Act of 1987, § 6-5-540 et seq. (collectively "AMLA"), and (2) the court's order prohibiting them from using the psychological records (and certain related documents) in the case and requiring them to return or destroy those records and documents ("the protective order").[1] As to the venue order, we deny the petition because the Sportsmed defendants do not argue that the complaint did not support an inference that Dr. Chin had no medical reason for obtaining the psychological records. As to the protective order, we deny the petition because the Sportsmed defendants do not demonstrate that the order is subject to mandamus review.

---

[1]Dr. Chin and Sportsmed were represented by the same counsel, both in the circuit court and before this Court.

## I. Facts

The following historical facts are summarized from the facts alleged in Woodard's operative complaint, which are taken as true at this procedural juncture. See Ex parte Jim Walter Homes, Inc., 712 So. 2d 733, 734, 736 (Ala. 1998).

In March 2018, a one-ton battery cabinet that Woodard was installing while working fell on him, causing serious crush injuries. Woodard was airlifted to a hospital for emergency surgery. Several days later, he was transferred to a rehabilitation center. After his release and as part of his follow-up care, he attended therapy sessions with a psychologist.

In October 2019, Woodard saw Dr. Chin for pain management. Dr. Chin was a licensed physician with Sportsmed Orthopedic Specialists, P.C., at its center in Huntsville. At Woodard's first appointment, he signed a medical-records-release form generally authorizing other health-care providers to release their medical records to Dr. Chin. During the appointment, Dr. Chin asked Woodard for consent to obtain records of the psychologist's treatment. Woodard said that he did not want Dr.

Chin to obtain them. Nevertheless, Dr. Chin later sought and obtained the psychological records from a medical-case manager who had been retained by Woodard's employer's workers' compensation insurer.

Based on Dr. Chin's obtaining the records, Woodard sued the Sportsmed defendants in the Jefferson Circuit Court. Woodard asserted claims of breach of contract, breach of fiduciary duty, fraud, invasion of privacy, the tort of outrage, and civil conspiracy. The Sportsmed defendants moved to change venue to the Madison Circuit Court, pointing out that a section of AMLA, § 6-5-546, Ala. Code 1975, requires that "any action for injury or damages … against a health care provider based on a breach of the standard of care ... be brought in the county wherein ... the alleged breach ... occurred." The court denied the motion.

Woodard moved for a protective order, asserting that the psychological records were confidential and privileged. He requested that the court prohibit the Sportsmed defendants from disclosing the psychological records in discovery or using them at trial or otherwise. He further asked the court to order the Sportsmed defendants to return or destroy all copies of the psychological records in their possession and any

4

1210175

notes or documents summarizing them. The court granted the motion.

The Sportsmed defendants now seek mandamus relief from this Court.

## II. Standard of Review

"A writ of mandamus will be issued only when (1) the petitioner has a clear legal right to it, (2) a respondent has refused to perform a duty, (3) there is no other adequate remedy, and (4) the petitioned court has jurisdiction." Ex parte Boone Newspapers, Inc., 337 So. 3d 1187, 1189 (Ala. 2021).

## III. Analysis

The Sportsmed defendants seek relief from two orders: the order denying their motion to change venue under AMLA and the protective order prohibiting them from using or disclosing the psychological records and certain related documents and requiring them to return or destroy them.

## A. Venue

A trial court's refusal to change venue is reviewable by mandamus. Ex parte Sawyer, 892 So. 2d 898, 901 (Ala. 2004). Ordinarily, we review

the denial of a motion to change venue by assessing whether the trial court exceeded its discretion. <u>Ex parte Flexible Prods. Co.</u>, 915 So. 2d 34, 51 (Ala. 2005). Nevertheless, we review questions of law de novo. <u>Ex parte Hughes</u>, 51 So. 3d 1016, 1018 (Ala. 2010).

The Sportsmed defendants argue that the circuit court erred in denying their motion to change venue because, they contend, Woodard's claims are governed by AMLA, which requires that medical-malpractice claims be adjudicated in the county in which the alleged breach occurred, § 6-5-546, Ala. Code 1975. Woodard concedes that, if AMLA applies, then the venue motion should have been granted. Thus, the dispositive question is whether AMLA applies to Woodard's claims for purposes of the venue motion.

AMLA applies to claims (1) against a health-care provider (2) for "medical injury" (3) based on a breach of the standard of care. See §§ 6-5-540, -543(a), -544(a), -546, -548(a), (d), -549, -550, -551; <u>Ex parte Vanderwall</u>, 201 So. 3d 525, 537 (Ala. 2015); <u>Ex parte Addiction & Mental Health Servs., Inc.</u>, 948 So. 2d 533, 535-36 (Ala. 2006); Jenelle Mims Marsh, <u>Alabama Law of Damages</u> § 36:45, at 948-49 (6th ed. 2012).

"Medical injury" is harm that occurs "because of the provision of medical services," Vanderwall, 201 So. 3d at 537-38 (emphasis omitted). "Medical services," in turn, are conduct that the health-care provider has a "therapeutic or medical reason," id. at 538, for engaging in.

Before considering whether Dr. Chin had a therapeutic or medical reason for obtaining Woodard's psychological records, we must first consider the procedural standard or lens through which this factual question must be viewed. This Court has never squarely addressed the standard in the context of a motion to change venue. However, a motion challenging venue is analogous to a motion challenging personal jurisdiction. In both postures, generally the only "facts" before the trial court are the allegations of the complaint and the averments of any affidavits filed with or in response to the motion. See Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So. 2d 888, 894 (Ala. 2002) ("'In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits.'" (citation omitted)); 14D Charles Alan Wright et al., Federal Practice and

Procedure § 3826 (4th ed. 2013) ("In ruling [on a motion challenging venue], the court will consider to be true any well-pleaded allegations of the complaint that bear on venue, unless contradicted by defendant's affidavit evidence." (footnote omitted)). In viewing those facts, the court "'"must construe all reasonable inferences in favor of the plaintiff."'" Wenger, 853 So. 2d at 894 (citations omitted); see 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (3d ed. 2004) ("[In deciding a motion challenging venue,] the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." (footnote omitted)).[2]

Thus, the Sportsmed defendants had two primary options in challenging venue. They could argue that, based on the allegations in Woodard's complaint, no reasonable inference could be drawn that Dr.

---

[2]As an alternative to viewing the facts regarding venue in the light most favorable to the plaintiff, a trial court may hold an evidentiary hearing to resolve factual conflicts. See Ex parte Bloodsaw, 648 So. 2d 553 (Ala. 1994); 14D Charles Alan Wright et al., Federal Practice and Procedure § 3826 (4th ed. 2013); see, e.g., Ex parte Reliance Ins. Co., 484 So. 2d 414, 415-17 (Ala. 1986) (4th ed. 2013); Ex parte Wiginton, 743 So. 2d 1071, 1072, 1074-75 (Ala. 1999). The circuit court did not do so here.

Chin had no medical reason for obtaining Woodard's psychological records. Or the Sportsmed defendants could seek to controvert such an inference with affidavit evidence that Dr. Chin had a medical reason. However, the Sportsmed defendants did neither. They did not submit any affidavits, but relied entirely on Woodard's allegations. See Thompson v. Greyhound Lines, Inc., Civil Action No. 12-0576-WS-B, Dec. 13, 2012 (S.D. Ala. 2012) (not reported in Federal Supplement) ("Neither side presented affidavits or other evidence [regarding venue], so the Court's review is limited to the complaint."). And they did not argue that those allegations did not support an inference that Dr. Chin lacked a medical reason for obtaining the psychological records.[3]

Instead, they argued that AMLA applied because the alleged harm occurred during the course of treatment and in the context of a doctor-patient relationship. That argument thus relied on this Court's previous "time and place" test for determining whether a claim is for "medical

---

[3]The dissent does make that argument. But we will not grant mandamus relief on the basis of an argument that the Sportsmed defendants failed to make in the circuit court. See Ex parte American Res. Ins. Co., 58 So. 3d 118, 121 n.2 (Ala. 2010).

9

injury" for purposes of applicability of AMLA. Under that test, a claim was for "medical injury" if the alleged conduct occurred "as part of a physician's examination and/or treatment of a patient" and thus "during the delivery of professional services," Mock v. Allen, 783 So. 2d 828, 833 (Ala. 2000). Put another way, "medical injury" was present if the conduct occurred "during the course of medical treatment" and the claim arose "as a direct result of a particular medical treatment," O'Rear v. B.H., 69 So. 3d 106, 114 (Ala. 2011). For example, the test asked: "Did the alleged [conduct] occur within 'the doctor's office or hospital' and did it occur 'while [the defendant] was providing professional services'?" Vanderwall, 201 So. 3d at 536.

In Vanderwall, however, we expressly rejected that "time and place" test and overruled Mock and O'Rear. Id. at 534-38. In its place, we applied the medical-reason test set forth above: In short, "medical injury" is harm that is caused by conduct that the defendant has a "medical reason" for engaging in. See id. at 537-38.

The Sportsmed defendants' reliance on the previous "time and place" test is confirmed by the fact that two of the cases on which the

Sportsmed defendants relied referenced that test. See <u>Allred v. Shirley</u>, 598 So. 2d 1347, 1349 (Ala. 1992) (summarizing <u>Benefield v. F. Hood Craddock Clinic</u>, 456 So. 2d 52 (Ala. 1984), as holding that AMLA applied because doctors' conduct occurred "'during the course of [the plaintiff's] treatment by her physicians' and ... '... [was] inextricably a part of ... doctor-patient consultations'" (citation omitted)); <u>Ex parte Sonnier</u>, 707 So. 2d 635, 638 (Ala. 1997) ("Claims alleging misrepresentations made during the course of a doctor-patient relationship are claims of malpractice and are governed by the AMLA."). (The other cases on which the Sportsmed defendants relied held that AMLA did <u>not</u> apply to a claim that arose <u>outside</u> the context of a doctor-patient relationship. See <u>Thomasson v. Diethelm</u>, 457 So. 2d 397 (Ala. 1984); <u>George H. Lanier Mem'l Hosp. v. Andrews</u>, 901 So. 2d 714, 720-21 (Ala. 2004). Those cases did not hold that AMLA <u>does</u> apply to all claims that arise <u>within</u> the context of a doctor-patient relationship.) To the extent that those cases applied the "time and place" test and thus are inconsistent with <u>Vanderwall</u>, we recognize that they have also been overruled.

In addition, the Sportsmed defendants argue in their petition that

"there was a medical reason behind [Dr. Chin's] request" and that it was a "medically-driven decision." That argument could be read as asserting that, from the allegations of the complaint, an inference could be drawn that Dr. Chin had a medical reason. But that assertion is premised on an inversion of the procedural standard. As explained above, all inferences from the complaint must be drawn in Woodard's favor, not the Sportsmed defendants' favor. Thus, the Sportsmed defendants would need to argue that the allegations of the complaint did not support an inference that Dr. Chin lacked a medical reason. The Sportsmed defendants do not make that argument.

Further, the Sportsmed defendants seek to distinguish a case relied on by Woodard, Ex parte Addiction & Mental Health Services, Inc., 948 So. 2d 533 (Ala. 2006). There, we held that AMLA did not apply to a patient's claims against a residential mental-health facility based on the facility's leaving his confidential records on the floor where others could see them and the facility's disclosing his confidential treatment information to his employer. We concluded that, although the patient's claims alleged a breach of a duty derived from the health-care-provider-

patient relationship, they did not allege "medical injury." We reasoned that the patient primarily alleged economic and reputational harm and that, to the extent that he alleged psychological harm, his causes of action were only for invasion of privacy, breach of contract, and breach of fiduciary duty.

The Sportsmed defendants seek to distinguish Addiction on two grounds. First, the Sportsmed defendants assert that the disclosures in Addiction were inadvertent, whereas Dr. Chin's obtaining the psychological records was intentional. However, even if the Addiction facility's leaving the records on the floor may have been inadvertent, it is not clear from the opinion that the facility's disclosure of the patient's treatment information to his employer was inadvertent. Second, the Sportsmed defendants contend that the Addiction disclosures were to nonmedical third parties, without any medical purpose, whereas Dr. Chin's request was for another health-care provider's records and was made for a medical reason. But it is clear that, in Addiction, the fact that the disclosures were made to nonmedical third parties played no role in our analysis. And we have already addressed the Sportsmed defendants'

13

"medical reason" assertion above.

More importantly, <u>Addiction</u> was decided before <u>Vanderwall</u> established that the test for "medical injury" is whether the defendant had a "medical reason" for the conduct. Thus, in <u>Addiction</u> we did not consider whether the facility had a medical reason for the disclosures. Accordingly, both <u>Addiction</u>'s reasoning regarding "medical injury" and the Sportsmed defendants' grounds for distinguishing <u>Addiction</u> are inapposite.

For these reasons, the Sportsmed defendants have not demonstrated that AMLA applies at this stage of the case. Accordingly, they have not demonstrated that the circuit court erred in denying their motion to change venue.

<u>B. Protective Order</u>

Next, the Sportsmed defendants contend that the circuit court erred in entering the protective order. The order prohibited the Sportsmed defendants from "disclosing, using, or offering any evidence or argument disclosing or summarizing the substance of privileged and confidential communications and/or records made during and for the purpose of

[Woodard's] psychological treatment." This prohibition included all psychological "communications and information ... [that had] been incorporated into the records of any of the Defendants." The prohibition applied to all disclosure or use of the described communications and records, including in discovery, in matters involving experts, in summary-judgment proceedings, and at trial. The order also required the Sportsmed defendants to return or destroy all records in their possession that "contain[ed], summarize[d] the substance of, or were created in conjunction with" the confidential psychological communications.

Woodard generally opposes the Sportsmed defendants' mandamus petition, although he does not oppose the part of the petition challenging the return-or-destroy requirement of the protective order. Regardless, the Sportsmed defendants have the burden of showing that the order is subject to mandamus review, see Ex parte Ocwen Fed. Bank, FSB, 872 So. 2d 810, 814 (Ala. 2003); Ex parte Encompass Health Corp., 334 So. 3d 199, 203 (Ala. 2021); cf. Ex parte Tubbs, 585 So. 2d 1301, 1302 (Ala. 1991) (explaining that jurisdiction to review a mandamus petition cannot be conferred by consent of parties).

1210175

The Sportsmed defendants argue that the protective order is subject to mandamus review because it requires them to destroy Dr. Chin's own notes summarizing the contents of the psychological records. The Sportsmed defendants assert that those notes show Dr. Chin's reasons for obtaining the psychological records and that, without those notes, the Sportsmed defendants "cannot properly defend" against Woodard's claims. The Sportsmed defendants rely on the following statement by this Court that certain types of discovery orders are subject to mandamus review:

> "'"'"[A] discovery order may be reviewed by a petition for a writ of mandamus [under certain circumstances]. Such circumstances [include] ... when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party's entire action or defense so that, in either event, the outcome of the case has been all but determined and the petitioner would be merely going through the motions of a trial to obtain an appeal[] or ... when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that an appellate court cannot review the effect of the trial court's alleged error."'"'"

Ex parte Mobile Infirmary Ass'n, 279 So. 3d 1129, 1133 (Ala. 2018) (citations omitted).

The Sportsmed defendants do not demonstrate that any of those

16

circumstances is present here. First, they do not show that the protective order's requirement to destroy Dr. Chin's notes that summarized the psychological records "effectively preclud[es] a decision on the merits" of the Sportsmed defendants' defense against Woodard's claims "so that ... the outcome of the case has been all but determined and the [Sportsmed defendants] would be merely going through the motions of a trial to obtain an appeal," id. Although those notes may be relevant to the Sportsmed defendants' defense, it is not at all clear from the Sportsmed defendants' petition and reply brief that those notes (and any testimony based on them) are the only evidence that could be presented at trial to show Dr. Chin's reasons for requesting the psychological records. Nor is it clear that Dr. Chin's reasons would be the central factual issue at trial; it appears that other issues, such as whether Woodard consented to Dr. Chin's obtaining the records, could be equally or more significant.[4]

_____

[4]The dissent contends that the protective order's destruction requirement caused "the outcome of the case [to be] all but determined," as to the parts of the complaint that demanded an injunction requiring the Sportsmed defendants to return or destroy all copies of Woodard's psychological records and communications, because the order prematurely awarded that very relief. But that argument for mandamus

17

Second, the Sportsmed defendants do not explain how the order's requirement of destroying those notes "denies discovery," id.

Third, the Sportsmed defendants do not explain how that destruction requirement "prevents [them] from making a record on [a] discovery issue so that [this Court] cannot review the effect of the [circuit] court's alleged error," id. The relevant content of the subject notes is obvious from the scope of the destruction requirement itself: The notes summarize confidential communications that were documented by the psychological records. And in the circuit court, the Sportsmed defendants had ample opportunity to put on the record their contentions about the nature and legal relevance of the notes. They do not explain why that opportunity was insufficient to make a record on this issue. They do not assert, for example, that it was necessary for them to be allowed to file with the court the notes themselves.

Accordingly, the Sportsmed defendants have not demonstrated that

---

review is not raised by the Sportsmed defendants, so we do not consider it. See Ex parte Drury Hotels Co., 303 So. 3d 1188, 1193 (Ala. 2020) ("'"[N]o matter will be considered on ... [... mandamus review] unless presented and argued in brief."'" (citations omitted; bracketed language in Drury)).

the protective order is subject to mandamus review.[5]

## IV. Conclusion

Based on the foregoing, we deny the Sportsmed defendants' petition.

---

[5]The dissent contends that the protective order is subject to mandamus review because it was entered in violation of due process, was void, and deprived the Sportsmed defendants of jury-trial rights.

The Sportsmed defendants assert the due-process and jury-trial bases but do not support them with any authority. See Ex parte Showers, 812 So. 2d 277, 281 (Ala. 2001) ("[The mandamus petitioner's] failure to cite authority supporting her arguments, as required by Rule 21, [Ala. R. App. P.,] provides this Court an ample basis for refusing to consider those arguments ...."). Although the dissent attempts to cure that deficiency, we have repeatedly stated that we will not do a party's citation-finding work, see Ex parte Drury Hotels Co., 303 So. 3d 1188, 1193 (Ala. 2020); Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So. 2d 1, 9 (Ala. 2007).

The dissent's argument based on voidness is built on an incorrect premise. The dissent implicitly assumes that a preliminary injunction entered in violation of Rule 65, Ala. R. Civ. P., is entered without jurisdiction and therefore void. But the requirements of Rule 65 are not jurisdictional. See 11A Charles Alan Wright et al., Federal Practice and Procedure § 2955 (3d ed. 2013) ("A court's failure to comply with the prerequisites in Rule 65(d) as to the proper scope or form of an injunction or restraining order does not deprive it of jurisdiction or render its order void." (footnote omitted)). Noncompliance with Rule 65's requirements may be error, but it does not render an injunction void, i.e., void ab initio on the basis that it was entered without jurisdiction.

19

1210175

PETITION DENIED.

Mitchell, J., concurs specially, with opinion.

Shaw, Bryan, Mendheim, and Stewart, JJ., concur in the result, without opinions.

Cook, J., dissents, with opinion, which Sellers, J., joins.

1210175

MITCHELL, Justice (concurring specially).

I read the main opinion to say only that the petitioners have failed here to satisfy our mandamus test, not that the unauthorized obtainment of medical records by a medical provider could never fall within the scope of the Alabama Medical Liability Act, § 6-5-480 et seq. and § 6-5-540 et seq., Ala. Code 1975. With that understanding, I concur with the main opinion.

1210175

COOK, Justice (dissenting).

I respectfully dissent. First, I believe that venue is improper in Jefferson County because, in my opinion, the Alabama Medical Liability Act ("the AMLA"), § 6-5-480 et seq. and § 6-5-540 et seq., Ala. Code 1975, applies. The substance of Malik Landen Woodard's claims against Victor Chin, M.D., and Sportsmed Orthopedic Specialists, P.C. ("the Sportsmed defendants") -- not the label of his claims -- determines whether the AMLA applies in this case. Woodard's complaint makes clear that Dr. Chin sought Woodard's psychological records for the purpose of providing him medical treatment and then used them for that purpose. It is not possible to read the complaint and draw any other inference. In fact, neither Woodard's answer to the Sportsmed defendants' mandamus petition nor the main opinion denies that Dr. Chin was acting for a medical reason and was providing medical treatment when he sought and used those records.

Second, I disagree with the main opinion's conclusion that the protective order is not subject to mandamus review. Both parties agree that the requirement that the Sportsmed defendants return or destroy

22

Woodard's psychological records and any documents summarizing the contents of those records should be set aside. Moreover, there is good reason that both parties agree. The trial court had no power, through the issuance of a discovery order, to order the return or destruction of documents that the Sportsmed defendants possessed before the lawsuit began. Instead, to issue such an order, the trial court was required to follow the procedures set forth in Rule 65, Ala. R. Civ. P., regarding the issuance of preliminary injunctions. Here, the trial court issued the protective order within hours of the filing of the motion requesting it, without providing the Sportsmed defendants the opportunity to file a response in opposition to the motion and without complying with the provisions of Rule 65.[6] In short, the trial court's order is not a "protective order."

## Venue

The main opinion correctly states that if Woodard's claims are

---

[6]There is good reason to doubt the authority of the trial court to order the destruction of the psychological records, even under Rule 65, given that this would seem impossible to correct if the jury later determined that Dr. Chin did have proper consent to obtain those records and acted reasonably. However, we need not reach this issue today.

governed by the AMLA, they must be adjudicated in the county in which the alleged breach occurred. See § 6-5-546, Ala. Code 1975 ("[A]ny action for injury or damages … against a health care provider based on a breach of the standard of care … must be brought in the county wherein … the alleged breach … occurred."). The parties appear to agree that the actionable conduct in this case occurred in Madison County -- where Dr. Chin treated Woodard -- and not in Jefferson County -- where this action is now pending.

In his complaint, Woodard pleaded only common-law claims, including fraud, breach of fiduciary duty, invasion of privacy, and breach of contract, in connection to Dr. Chin's obtaining his psychological records. However, as stated correctly in the main opinion:

> "AMLA applies to claims (1) against a health-care provider (2) for 'medical injury' (3) based on a breach of the standard of care. See [Ala. Code 1975,] §§ 6-5-540, -543(a), -544(a), -546, -548(a), (d), -549, -550, -551; Ex parte Vanderwall, 201 So. 3d 525, 537 (Ala. 2015); Ex parte Addiction & Mental Health Servs., Inc., 948 So. 2d 533, 535-36 (Ala. 2006); Jenelle Mims Marsh, Alabama Law of Damages § 36:45, at 948-49 (6th ed. 2012). 'Medical injury' is harm that occurs 'because of the provision of medical services.' Vanderwall, 201 So. 3d at 537-38 …. 'Medical services,' in turn, are conduct that the health-care provider has a 'therapeutic or medical reason,' id. at 538, for engaging

<u>in</u>."

\_\_\_\_ So. 3d at \_\_\_\_ (emphasis added). As further correctly stated in the main opinion, the burden of showing that a cause of action is controlled by the provisions of the AMLA is on the movant. The main opinion states that, in this case, the Sportsmed defendants could have met that burden and, thus, demonstrated the need to change venue either (1) by presenting affidavit testimony or (2) by arguing that, "based on the allegations in Woodard's complaint, no reasonable inference could be drawn that Dr. Chin had no medical reason for obtaining Woodard's psychological records." \_\_\_\_ So. 3d at \_\_\_\_. I disagree with the main opinion's conclusion that the Sportsmed defendants "did neither." \_\_\_\_ So. 3d at \_\_\_\_.

The Sportsmed defendants argued that "there was a medical reason behind [Dr. Chin's] request" and that Dr. Chin's decision to obtain the psychological records was a "medically-driven decision." Petition at 17, 19. The materials before this Court show that, in his complaint, Woodard alleged the following:

- At Dr. Chin's office's request, Woodard executed a "<u>Medical</u> <u>Records</u> <u>Release</u>," which his office used to obtain the

records. (Emphasis added.)

- Dr. Chin is a <u>medical</u> doctor, i.e., a licensed physician.

- Dr. Chin sought records for his <u>medical treatment</u> of Woodard.

- Woodard was under Dr. Chin's <u>medical treatment</u>.

- Dr. Chin <u>used the records in his treatment of Woodard</u>. ("Dr. Chin's <u>notes for his visit with [Woodward]</u> on November 11, 2019, contain both Dr. Chin's acknowledgment of his receipt <u>and review</u>, <u>as well as a summary</u> … [of the psychological records]." (emphasis added)).

I cannot imagine what inference could be drawn from these allegations other than that the psychological records were sought, and used, by Dr. Chin for a "medical reason" -- i.e., for the purpose of providing Woodard with medical treatment.

The complaint does not allege that Dr. Chin acted for any reason other than to provide Woodard with medical treatment. Further, there were no such facts pleaded. For instance, there are no facts pleaded indicating that Dr. Chin had any personal or ulterior motive for obtaining Woodard's psychological records. Because, as the main opinion agrees, a venue motion can be based upon the allegations in a complaint, it appears in this case that Dr. Chin acted because of a "medical reason" and that,

therefore, Woodard's claims arose under the AMLA.

The main opinion relies heavily on the Ex parte Vanderwall, 201 So. 3d 525, 537 (Ala. 2015), which abandoned the "time and place" test for determining the application of the AMLA. As both the main opinion and I have noted, Vanderwall holds that a "medical injury" is harm that occurs "because of the provision of medical services" and that "medical services" are conduct that the health-care provider has a "therapeutic or medical reason" for engaging in. 201 So. 3d at 537-38 (second emphasis added).

Here, the alleged wrongful conduct by Dr. Chin is his seeking and then using the psychological records. Those acts are the "provision of medical services." The records were requested by a medical provider with the use of a "Medical Records Release" for the purpose of using them in medical treatment, and they were then used for the purpose of medical treatment. Here, the specific wrongful conduct (obtaining and using the records) is part of the provision of medical treatment. This is completely unlike the facts in Vanderwall, which concerned a sexual assault, where there obviously was no medical reason for the alleged wrongful conduct.

27

Vanderwall did not overrule past precedent in which this Court has held that the substance and not the form of the complaint is what determines whether an action is governed by the provisions of the AMLA. For example, in Allred v. Shirley, 598 So. 2d 1347, 1348-49 (Ala. 1992), a case cited by the Sportsmed defendants in their mandamus petition, a patient sought treatment from a physician for an ongoing medical problem related to the surgical removal and replacement of prosthetic implants. When the physician attempted to replace the prosthetic implants and the replacements malfunctioned, the physician allegedly promised the patient that he would not be responsible for some of the costs associated with taking corrective measures. However, when the patient was ultimately charged for those costs, he sued the physician, asserting tort-of-outrage, conversion, and breach-of-contract claims and seeking damages for lost wages, physical and emotional pain, and emotional distress. The trial court granted the physician's motion for a summary judgment.

On appeal, this Court addressed whether the patient's complaint alleged a claim of medical malpractice and was, thus, governed by the

AMLA. In addressing this issue, this Court first noted:

> "In <u>Benefield v. F. Hood Craddock Clinic</u>, 456 So. 2d 52 (Ala. 1984), we stated that it is the <u>substance of the action, not the form of the action, that determines whether it is a medical malpractice action and whether it is, therefore, controlled by the provisions of the Alabama Medical Liability Act</u>. <u>Id.</u> at 54."

598 So. 2d at 1348-49 (some emphasis in original; some added). This Court then explained:

> "[The patient] complains, in substance, about statements made <u>about</u> his <u>treatment</u> during the course of treatment, i.e., that prostheses were replaced that he says were in fact not replaced …. The <u>injuries he alleges flow from the failure of treatment and from discussions about his treatment</u> …."

<u>Id.</u> at 1349 (some emphasis in original; some emphasis added). Based on the substance of the claims, this Court concluded that the patient had in fact pleaded a claim under the AMLA.

<u>Allred</u> is just one of many Alabama cases holding that the substance and not the form of the complaint controls when determining whether the AMLA applies. <u>See, e.g.,</u> <u>Ex parte Alabama Dep't of Mental Health & Mental Retardation</u>, 723 So. 2d 11, 13 (Ala. 1998) (recognizing that this Court has held that "'the <u>substance</u> of an action, rather than its <u>form</u>, determines whether an action is a medical malpractice action and,

29

therefore, controlled by the [AMLA]'" (citation omitted)); Ex parte Northport Health Serv., Inc., 682 So. 2d 52, 55 (Ala. 1996) (same); and Ex parte Golden, 628 So. 2d 496 (Ala. 1993) (same).

Here, as alleged in Woodard's complaint, the alleged wrongful conduct by Dr. Chin is his seeking and then using Woodard's psychological records. Those records were requested by a medical provider with the use of a "Medical Records Release" for the purpose of using them in medical treatment, and they were then used for the purpose of providing a patient -- Woodard -- with medical treatment. Therefore, it is reasonable to conclude that the wrongful conduct at issue was engaged in for a "medical reason" -- i.e., as part of the "provision of medical services," Vanderwall, 201 So. 3d at 537-38 (emphasis omitted), and that, like in Allred, the AMLA applies.

The main opinion dismisses Allred and its holding on the basis that Allred applied the "time and place" test and has, therefore, been overruled by Vanderwall. I do not agree. First, the Court in Vanderwall neither stated that it was overruling the "substance over form" standard, nor stated that it was overruling Allred. Second, Allred does not even

mention the "time and place" test. Instead, as demonstrated above, the central issue in Allred was whether the substance of the patient's complaint alleged a medical-malpractice claim. In reviewing the allegations made by the patient, this Court, focusing on the causal connection between the medical treatment and the harm to the patient, concluded that the patient had alleged such a claim. This Court had no reason to address the finer points of such an analysis, which might have included a discussion of the "time and place" test.[7]

Woodard does not argue that Dr. Chin lacked a "medical reason" for seeking and using the records at issue. Instead, he concedes that, "from

_____

[7]Even in Benefield v. F. Hood Craddock Clinic, 456 So. 2d 52 (Ala. 1984), which was quoted in Allred, this Court made clear that it was not merely the happenstance that the alleged misrepresentations occurred during medical treatment that determined whether the AMLA applied. Instead, the key fact was that the alleged misrepresentations were made because of medical treatment. See also Ex parte Golden, 628 So. 2d 496, 498 (Ala. 1993) (holding that the fraud claim alleged by the plaintiff was really a medical-malpractice claim under the AMLA because the "substance" of that claim was that the misrepresentation made to the plaintiff induced her to undergo allegedly unnecessary treatment); Johnson v. McMurray, 461 So. 2d 775, 778 (Ala. 1984) (holding that a fraudulent-concealment claim about participation of one doctor in surgery was, in substance, a medical-malpractice claim under the AMLA).

a pure standpoint of the patient's medical prognosis," a medical-care provider's "solicitation or disclosure of confidential information could be reasonable in a particular case." Answer at 20 (emphasis in original). He then goes on to argue that Dr. Chin's motive for his actions is not determinative of whether the AMLA applies. Id. at 18. Woodard argues that there is a duty of confidentiality a medical-care provider owes to his or her patient that "may supersede the provider's judgment to disallow a disclosure [the provider] might reasonably and in good faith think would be 'good' for the patient or his condition …." Id. at 20 (emphasis added). Thus, Woodard does not dispute Dr. Chin's medical reason for acting. Instead, he argues for adding things to the Vanderwall legal standard. Specifically, Woodard argues:

> "Dr. Chin's subjective motive in seeking the records is not determinative of whether the AMLA applies. Rather, Ex parte Addiction[ & Mental Health Servs., Inc., 948 So. 2d 533 (Ala. 2006),] teaches that what matters is whether the claim at issue alleges (1) a 'medical injury' (2) caused by a breach of the standard of care, that is, the duty to exercise reasonable care, skill, and diligence in rendering medical treatment. Even if Dr. Chin considered obtaining the records over [Woodard's] objection to have been 'medically driven' for the purpose of facilitating 'medical treatment,' it does not logically follow: (1) that Dr. Chin's solicitation was itself 'medical treatment'; (2) that [Woodard's] claim is based on a breach of

the standard of care; or (3) that [Woodard] suffered 'medical injury.'"

Answer at 18 (some emphasis in original; some emphasis added).

In support of his "standard," Woodard relies upon Ex parte Addiction & Mental Health Services, Inc., 948 So. 2d 533 (Ala. 2006). However, that case predated Ex parte Vanderwall and therefore could not have engrafted extra requirements for a claim to qualify as an AMLA claim. Additionally, this alleged standard -- that is, that the "motive" of the medical-care provider for engaging in conduct is not enough to trigger the AMLA -- is directly contrary to the standard set in Vanderwall providing that "medical injury" is harm that occurs "because of the provision of medical services" and that "medical services" are conduct that the health-care provider has a "therapeutic or medical reason" for engaging in. Id. at 537-38 (second emphasis added).

Further, the circumstances surrounding Dr. Chin's actions are fundamentally different from the circumstances in Ex parte Addiction. There, records were disclosed to the plaintiff's employer and left unsecured on the floor of a mental-health facility for anyone to see. Here, the psychological records were disclosed to a medical-care provider who

used them for the purpose of providing medical care to the plaintiff. Thus, here, the records were requested and used because of a "medical reason." As <u>Vanderwall</u> held (almost a decade after <u>Ex parte Addiction</u>): "From the foregoing, it is clear that the AMLA is not just concerned with who committed the alleged wrongful conduct or when and where that conduct occurred, but also with <u>whether the harm occurred because of the provision of medical services</u>." 201 So. 3d at 537-38.

Perhaps most troubling, Woodard's new "standard" imposes obligations upon Dr. Chin based upon his medical relationship with Woodard and his medical decisions but then takes the position that such obligations do not trigger the provisions of the AMLA. This is contrary to our caselaw, including <u>Vanderwall</u>. This further illustrates why the claims are "because of the provision of medical services." <u>Id.</u> (emphasis omitted). For example, in his complaint, Woodard alleged as a basis for his fraud claim (and his breach-of-fiduciary-duty claim) that, "Dr. Chin and [Woodard], <u>as doctor and patient</u>, had a special relationship of trust and confidence, <u>giving rise to a duty</u> on the part of Dr. Chin to disclose all material facts related to [seeking and using the psychological

34

records]." (Emphasis added.) He further alleged that Dr. Chin's efforts to obtain his psychological records were "in breach of Dr. Chin's fiduciary obligations to [Woodard] as his physician." (Emphasis added.) Woodard likewise claims that he "entered into a contract for the provision of medical care and treatment by Dr. Chin" and then claims that this very contract for "medical care" was breached when Dr. Chin obtained his psychological records without his consent, thus giving rise to his breach-of-contract claim. (Emphasis added.) In fact, Woodard even claims that at least part of his injury was continuing to see Dr. Chin for medical treatment.

Woodard cannot have it both ways. He wants to subject Dr. Chin to an enhanced duty because the conduct was undertaken for the purpose of medical treatment and then wants to disclaim the applicability of the AMLA. He cannot do this. The standard Dr. Chin must meet "as a doctor" and "as a physician" -- i.e., the duty he owes his patient -- is a medical standard of care.

In short, there is simply no way to read the complaint other than to conclude that Dr. Chin decided that he needed additional treatment

records to guide his treatment of Woodard and then sought and used Woodard's psychological records for that purpose. This case is about a treatment decision made by a physician based upon what he believed was needed to provide the correct medical treatment to his patient. Whether he was mistaken in such an assessment is irrelevant to whether the AMLA applies in the present action. For these reasons, I would grant the petition as to the venue issue.

## Protective Order

As to the second issue -- concerning the protective order -- I disagree with the main opinion's reasoning and conclusion. In his complaint, Woodard requested, as final relief, that the psychological records obtained and used by Dr. Chin (and any documents summarizing the contents of those records) be returned or destroyed. Later, he filed a motion for a protective order, which nominally dealt with discovery matters. Without providing the Sportsmed defendants any opportunity to respond, the trial court entered an order granting the motion and providing the exact relief requested in the complaint. The trial court entered the order the morning after the motion was filed. I am concerned

for several reasons about the main opinion's acceptance of these circumstances in concluding that the order is not subject to mandamus review.

First, I note that both parties have agreed that this aspect of the "protective order" should be set aside. The main opinion does not address this crucial fact. Alabama courts routinely accept party stipulations (and should do so) for the purpose of judicial economy. Although the refusal to accept stipulations by parties before this Court might be warranted when an impediment, such as a lack of jurisdiction, prevents us from doing so, no such impediment exists in this case.[8]

Second, contrary to the main opinion's holding, the Sportsmed defendants have adequately alleged that they are entitled to mandamus relief on this issue. This Court has recognized that (1) due-process

---

[8]The main opinion includes a "cf." citation to Ex parte Tubbs, 585 So. 2d 1301, 1302 (Ala. 1991), for the proposition that "jurisdiction to review a mandamus petition cannot be conferred by consent of parties." ____ So. 3d at ____. Ex parte Tubbs is fundamentally different from this case because it was not a mandamus proceeding from a trial court. It was an original proceeding in this court seeking mandamus relief directed to the Alabama Highway Department. The main opinion cites no additional authority for the proposition that providing mandamus relief here would be barred based on a lack of jurisdiction.

violations, (2) void orders, and (3) the deprivation of jury-trial rights are all issues that can be subject to mandamus review. See, e.g., Ex parte Bashinsky, 319 So. 3d 1240, 1263 (Ala. 2020) (granting mandamus review because of violation of "procedural due process," which includes "'the opportunity to present evidence and argument, representation by counsel, if desired, and information as to the claims of the opposing party, with reasonable opportunity to controvert them'" (citation omitted)); Ex parte Sealy, L.L.C., 904 So. 2d 1230, 1232 (Ala. 2004) (stating that "[m]andamus will lie to direct a trial court to vacate a void judgment or order"); Ex parte North American Adjusters, Inc., 205 So. 3d 1215, 1216-17 (Ala. 2016) (recognizing that mandamus review is appropriate for denial of a right to a jury trial). All three such circumstances are present in this case.

The "protective order" was issued within hours of Woodard's motion being filed. There was no hearing provided and no notice that the order would be issued without the Sportsmed defendants' being given an

opportunity to respond to the motion.[9] The motion was filed at 3:02 p.m. on December 9, 2021, and it was granted at 10:29 a.m. the next day -- giving the Sportsmed defendants until Christmas Eve to destroy or deliver all copies of the psychological records, including any documents that summarized those records.[10] Under these circumstances, it cannot be said that the Sportsmed defendants were afforded due process. Therefore, they are entitled to mandamus relief.

The "protective order" is also a void order, and certainly not a discovery order, because the trial court had no authority to issue such an order. A trial court cannot order a party to destroy something it

---

[9]For instance, the Sportsmed defendants had no opportunity to argue to the trial court that the signed "Medical Records Release" authorized their retention of the records. Woodard claims that the "Medical Records Release" is not effective for a number of reasons -- e.g., because he revoked it; because a portion of the release was blank; because he does not believe it covers these types of records; because he did not understand it, etc. I make no judgment on the validity of any of those arguments; however, to say the least, the validity of the release is a disputed issue of material fact at this point, yet the order was entered without the opportunity for the Sportsmed defendants to even make that argument.

[10]Effectively, this order is a destruction order because, based upon the briefing, the records appear to be electronic records.

possessed before the commencement of a lawsuit absent its issuing an injunction in compliance with Rule 65, Ala. R. Civ. P. (or without actually adjudicating the claim). See Ex parte Waterjet Sys., Inc., 758 So. 2d 505, 507 (Ala. 1999) (after trial court granted preliminary injunction in trade-secrets case to, among other things, require former employee to return documents allegedly taken when former employee left employment but former employee ultimately prevailed at trial, this Court ordered injunction bond to be used to pay damages incurred because of issuance of preliminary injunction); HB&G Bldg. Prods. Inc. v. Digger Specialties, Inc., Civil Action No. 2:22-cv-329-ECM, June 3, 2022 (M.D. Ala. 2022) (not reported in Federal Supplement) (issuing preliminary injunction requiring defendant to "sequester, isolate, and maintain" allegedly stolen information but refusing to order return of information); Pareto Health (AL), LLC v. WeCare TLC, LLC, Case No. 2:21-cv-00530-AMM, Apr. 23, 2021 (N.D. Ala. 2021) (not reported in Federal Supplement) (refusing to issue temporary restraining order requiring transfer of "books and records" upon ending of vendor relationship and noting that, when a "'preliminary injunction goes beyond the status quo and seeks to force

one party to act, it becomes a mandatory or affirmative injunction and the burden placed on the moving party is increased'" (quoting Mercedes-Benz U.S. Int'l, Inc. v. Cobasys, LLC, 605 F. Supp. 2d 1189, 1196 (N.D. Ala. 2009), citing in turn Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp., 441 F.2d 560, 561 (5th Cir. 1971) (recognizing that, when plaintiff requests "a mandatory preliminary injunction, such relief should not be granted except in rare instances …."))). Because the trial court lacked any clear authority to issue such an order, the "protective order" is void, and, thus, the Sportsmed defendants are entitled to mandamus relief.

Additionally, the trial court has not adjudicated whether Dr. Chin has a legal right to the psychological records. There is a jury-trial demand in this case. Disputed factual questions must normally be answered by a jury, and the jury must answer them before any order requiring destruction of such records. The United States Supreme Court long ago held that a court may not order equitable relief (except on a preliminary injunction) before a jury has determined underlying facts in cases in which the jury-trial right applies. See Dairy Queen, Inc. v. Wood, 369

41

U.S. 469, 479 (1962) ("Since these issues are common with those upon which respondents' claim to equitable relief is based, the legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims."). Because the Sportsmed defendants' right to a jury trial on the issue whether the records obtained and used by Dr. Chin should be returned or destroyed has been violated, they are also entitled to mandamus relief.

Third, to the extent that the main opinion claims that the Sportsmed defendants are not entitled to mandamus relief from the "protective order" because they cannot demonstrate irremediable harm, that conclusion is mistaken. Destruction, by definition, is "irremediable." Additionally, the main opinion quotes Ex parte Mobile Infirmary Ass'n, 279 So.3d 1129, 113 (Ala. 2018), for the proposition that mandamus review is appropriate only if the "'outcome of the case has been all but determined.'" ____ So. 3d at ____. Here, the "protective order" requires the Sportsmed defendants to either give the records to Woodard or destroy them. This is the very relief sought in the complaint. Thus, the

"outcome of the case has been all but determined" by this remedy.[11]

Fourth, the main opinion concludes that the Sportsmed defendants have not shown how the psychological records are relevant to their defense. This conclusion ignores the scope of the "protective order," which pertains to all records in the Sportsmed defendants' possession that "contain[ed], summarize[d] the substance of, or were created in conjunction with" the confidential psychological communications.

---

[11]Even if all of my analysis regarding the availability of mandamus relief with respect to the "protective order" is mistaken, we can still reach a just and proper result. This Court has a long history of treating mandamus and appeal interchangeably when justice so demands. See, e.g., Kirksey v. Johnson, 166 So. 3d 633 (Ala. 2014) (treating a cross-appeal as a petition for a writ of mandamus because it questioned the subject-matter jurisdiction of the probate court and this Court felt that such an issue was important to materially advancing the litigation); Slamen v. Slamen, 254 So. 3d 188, 192 n.3 (Ala. 2017) (treating an appeal as a petition for a writ of mandamus "[f]or expedience"); Ex parte Sanderson, 263 So. 3d 681, 685 (Ala. 2018) (treating an appeal from a denial of a motion for a summary judgment as a petition for writ of mandamus).

Here, the Sportsmed defendants filed a mandamus petition rather than appealing the "protective order" because the trial judge labeled it a "protective order." Had the trial judge properly labeled this an injunction, the Sportsmed defendants would have had a right of immediate appeal. See Rule 4(a), Ala. R. App. P. We should certainly afford the Sportsmed defendants the right that they would have had if the trial judge had correctly labeled his order.

(Emphasis added.) As the complaint expressly alleges, Dr. Chin summarized Woodard's psychological records in his treatment records. Thus, to comply with the order, Dr. Chin would have to destroy all or at least part of his own treatment records for Woodard.

Moreover, it is clear that the content of the records were the reason Dr. Chin believed that he needed them for his treatment of Woodard. At the very least, those records are relevant to the Sportsmed defendants to help them prove that Dr. Chin's decision to obtain the psychological records to assist him in treating Woodard was valid. Therefore, under these circumstances, the Sportsmed defendants are entitled to mandamus relief.

For these reasons, I would grant the petition as to the protective order.

Sellers, J., concurs.